## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

LOUIS D. CRAFT JR.,        )
                                 )
        **Plaintiff,**        )
                                 )
**v.**                          )     **Case No. CIV-12-1133-R**
                                 )
**GLOBAL EXPERTISE IN**       )
**OUTSOURCING et al.,**       )
                                 )
        **Defendants.**     )

## REPORT AND RECOMMENDATION

Plaintiff Louis D. Craft Jr., a state prisoner appearing pro se, brings this action under 42 U.S.C. § 1983, alleging violations of his Eighth and Fourteenth Amendment rights under the United States Constitution, as well as a state-law negligence claim.[1] United States District Judge David L. Russell has referred this matter to the undersigned Magistrate Judge for initial proceedings pursuant to 28 U.S.C. § 636(b).

Defendants Global Expertise in Outsourcing ("GEO"), Michael Plume, and Mary Braziel (collectively, "Defendants") have moved for summary judgment on Plaintiff's constitutional claims and for dismissal of Plaintiff's state-law claims, to which Plaintiff has responded. *See* Defs.' Mot. Summ. J., Doc. No. 34 ("Defs.' MSJ"); Order, Doc. No. 56 (permitting Defendant GEO to adopt summary judgment arguments in Defs.' MSJ);

---

[1] Plaintiff alleges "torts of the deliberate indifference and negligence," which the undersigned construes as allegations of negligence and of willful and wanton conduct under Oklahoma law. *See* Am. Compl., Doc. No. 31, at 7, 9; Okla. Stat. tit. 23, § 61.2; Okla. Stat. tit. 76, §§ 1, 5(a), 6; Okla. Unif. Civil Jury Instr. Nos. 9.1, 9.17, 9.51. These allegations are collectively referred to herein as Plaintiff's state-law "negligence claim."

Pl.'s Resp., Doc. No. 41. Defendants additionally have filed a Special Report ("S.R.," Doc. No. 33) in accordance with the Court's order and *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978). Plaintiff has filed a motion for summary judgment on all claims, to which Defendants have responded. *See* Pl.'s Mot. Summ. J., Doc. No. 62 ("Pl.'s MSJ"); Defs.' Resp., Doc. No. 68.

Having considered the arguments, pleadings, and evidentiary materials submitted by the parties, the undersigned recommends that summary judgment be granted in favor of Defendants on all of Plaintiff's constitutional claims, that Plaintiff's motion for summary judgment be denied, and that the Court decline to exercise supplemental jurisdiction over Plaintiff's state-law negligence claim.

PLAINTIFF'S CLAIMS

Plaintiff's claims arise out of events occurring at Lawton Correctional Facility ("LCF") in Lawton, Oklahoma, primarily in January 2012. *See* Am. Compl., Doc. No. 31, at 8-9; Pl.'s MSJ at 5-6.[2] Plaintiff alleges that he was provided no soap by prison authorities during the month of January 2012 and suffered injury as a result. *See* Am. Compl. at 8. Specifically, Plaintiff alleges that he requested soap from Defendant Plume, a prison unit manager, and from Defendant Braziel, a prison case manager, during the last week of January 2012, and Plaintiff's requests were refused. *See* Am. Compl. at 8-9. Plaintiff asserts that he developed a rash and "black sores" under his arms and between

---

[2] References to filings use the ECF pagination.

his legs from the lack of soap.[3]  *See* Am. Compl. at 8-9.  Plaintiff alleges that the failure to provide soap during this time period constituted cruel and unusual punishment in violation of the Eighth Amendment.  *See* Am. Compl. at 7, 8, 10.  Plaintiff's Eighth Amendment claim is raised against all Defendants.  *See* Am. Compl. at 10.

Further, Plaintiff claims that he suffered a violation of his Fourteenth Amendment due process rights in connection with the denial of soap.  *See* Am. Compl. at 10.  This claim is raised against Defendants Plume and Braziel only.  Am. Compl. at 10.  Finally, Plaintiff asserts a negligence claim under Oklahoma law against Defendant GEO.  *See* Am. Compl. at 10.  Plaintiff seeks compensatory and punitive damages as well as declaratory and injunctive relief.  *See* Am. Compl. at 11.[4]

## STANDARD OF REVIEW

Summary judgment is a means of testing in advance of trial whether the available evidence would permit a reasonable jury to find in favor of the party asserting a claim.

_____

[3] According to a document Plaintiff submitted to prison officials on May 1, 2012, after Plaintiff's rash developed he was seen by a doctor at least once and given a cream to apply.  Plaintiff stated that after using the cream for a month, the rash subsided, but Plaintiff was left with a scar between his legs and two spots under his arm.  Plaintiff asked that these alleged aftereffects be "corrected" because he "ha[s] to look at this everyday."  *See* S.R. Ex. 21, Doc. No. 33-21, at 1, 3.  Plaintiff additionally stated to prison officials that he needed mental health treatment because, among other things, he "feel[s] upset about [his] situation, especially when [he] look[s] at the black scar."  *See* Am. Compl. Ex. 4, Doc. No. 31-4, at 5; *see also* S.R. Exs. 7, 9, 12, 14, Doc. Nos. 33-7, -9, -12, -14.

[4] To the extent Plaintiff is suing on account of mental or emotional injury, the damages he may recover under 42 U.S.C. § 1983 are limited absent "a prior showing of physical injury."  *See* 42 U.S.C. § 1997e(e); Am. Compl. at 11 (seeking $100,000.00 in compensatory damages for "physical and emotional injuries").

The Court must grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, the Court views the evidence and the inferences drawn from the record in the light most favorable to the non-moving party. *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005). While the Court construes a pro se litigant's pleadings liberally, such a litigant nevertheless is held to the same rules of procedure as are binding on other litigants. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007).

A party that moves for summary judgment has the burden of showing that the undisputed material facts require judgment as a matter of law in its favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To defeat summary judgment, the nonmovant need not convince the Court that it will prevail at trial, but it must cite sufficient evidence admissible at trial to allow a reasonable jury to find in the nonmovant's favor, i.e. to show that there is a question of material fact that must be resolved by the jury. *See Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). Parties may establish the existence or nonexistence of a material disputed fact through:

- citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials" in the record; or

- demonstration "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1)(A)-(B).

A defendant seeking summary judgment on the basis of an affirmative defense

must show that the undisputed material facts establish *all* of the elements of the defense. *See Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997) ("The defendant . . . must demonstrate that no disputed material fact exists regarding the affirmative defense asserted."). If the defendant meets this burden, the burden shifts to the plaintiff to cite evidentiary material that shows there is a genuine factual dispute as to one or more elements of the affirmative defense, absent which summary judgment should be granted in favor of the defendant. *Id*.

With respect to cross-motions for summary judgment, the Court must evaluate each motion on its own merits, "constru[ing] all inferences in favor of the party against whom the motion under consideration is made." *See Pirkheim v. First Unum Life Ins.*, 229 F.3d 1008, 1010 (10th Cir. 2000). Although summary judgment is inappropriate if disputes remain as to material facts, the Court is permitted "to assume that no evidence needs to be considered other than that filed by the parties." *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (internal quotation marks omitted). The Court analyzes each cross-motion for summary judgment separately; "the denial of one does not require the grant of another." *Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1030 (10th Cir. 2007) (internal quotation marks omitted).

ANALYSIS

A. *Whether Defendants Are Entitled to Summary Judgment as a Result of Their Affirmative Defense That Plaintiff Failed to Exhaust Administrative Remedies*

Defendants seek summary judgment on the basis of their affirmative defense that Plaintiff's claims are barred because Plaintiff did not, prior to commencing this lawsuit, exhaust his available administrative remedies as required by the Prison Litigation Reform Act of 1995 ("PLRA"), codified in pertinent part at 42 U.S.C. § 1997e(a). *See* Defs.' MSJ at 9, 16-22; S.R. at 5-9; *see also Jones v. Bock*, 549 U.S. 199, 219-20 (2007) ("All [courts] agree that no unexhausted claim may be considered.").

1. The PLRA

The PLRA provides that no action under 42 U.S.C. § 1983 may be brought by a prisoner regarding conditions of confinement "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 90, 93-103 (2006) (explaining that Section 1997e(a) requires "proper exhaustion"—i.e., "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)" (internal quotation marks omitted)). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90-91.

2. The Oklahoma Department of Corrections' Offender Grievance Process

The Oklahoma Department of Corrections ("ODOC") has adopted an Offender Grievance Process, OP-090124, through which a prisoner in its custody may seek formal

administrative decisions or answers to complaints. *See* S.R. Ex. 17, OP-090124 (eff. May 24, 2011), Doc. No. 33-17. The ODOC Grievance Process requires an inmate initially to attempt informal resolution of the complaint by speaking to an appropriate staff member within three days of the relevant incident. *Id.* § IV(A). If the inmate is dissatisfied after this initial attempt, then he or she may submit a written "Request to Staff" within seven days of the incident. *Id*. § IV(B). This first informal level may be bypassed only if the complaint involves a sensitive topic or an emergency. *Id*. § VIII(A).

The next level of the ODOC Grievance Process is the filing of a formal Grievance. If dissatisfied with the response received from a Request to Staff, the inmate may file a Grievance within fifteen days of the incident or of the date of the response to the Request to Staff, whichever is later. *Id*. § V(A)(1). The Grievance is submitted to either the facility's Reviewing Authority or, if medical in nature, the Correctional Health Services Administrator ("CHSA"). *Id.* § V(B)(1). This level may be bypassed only if the Grievance involves a sensitive topic concerning the Reviewing Authority or CHSA. *Id*. § VIII(A)(4).

The final level of the ODOC Grievance Process is the filing of a Grievance Appeal. If dissatisfied with the response to a Grievance, the inmate may file a Grievance Appeal within fifteen days of the date of the response. *Id*. § VII(A), (B). The Grievance Appeal is submitted to the Administrative Review Authority ("ARA") or, if a medical grievance, the Chief Medical Officer ("CMO"). *Id*. § VII(B). The ruling of the ARA or CMO is final and concludes the administrative remedy procedures available through ODOC. *Id*. § VII(D).

The ODOC Grievance Process includes mechanisms for prisoners to seek relief if they fail to receive a response from a Request to Staff or a Grievance. If there has been no response to a Request to Staff "in 30 calendar days of submission," the inmate may file a Grievance with the facility's Reviewing Authority on the ground of non-responsiveness. *Id.* § IV(B)(7). If there has been no response to a Grievance within 30 days of its submission, the inmate may send a Grievance to the ARA or the CMO on the ground of non-responsiveness. *Id.* § V(C)(4).

Under the ODOC Grievance Process, inmates who are found to have abused the grievance process may be placed on a grievance restriction. *Id.* § IX. Examples of such abuse include Grievances intended to harass another; "continual and repeated submitting of frivolous grievances"; submission of Grievances regarding trifling matters; and continual submission of Grievances containing procedural defects following previous warning. *Id.* § IX(A)(1). When an inmate is placed on a grievance restriction, the inmate may participate in the grievance process but, in each Grievance submitted while subject to the restriction, must "show cause as to why [he or she] should be permitted to grieve." *Id.* § IX(B)(2). Such cause is shown as follows:

> The offender will submit a duly verified affidavit, made under penalty of discipline for lying to staff, attached to the grievance, stating that all contents of the grievance are true and correct to the best of the offender's knowledge. The affidavit will also contain a list by grievance number, date, description, and disposition at each level, of all grievances previously submitted by the offender within the last 12 months. Each page of the affidavit must be signed, verified and notarized.

*Id.* § IX(B)(2)(a). If the inmate does not comply with these requirements, the Grievance will be returned to the inmate, accompanied by written reasons for the Reviewing Authority's action. *Id.* § IX(B)(2)(b)-(c).

### 3. Plaintiff's Efforts to Exhaust Administrative Remedies

Plaintiff undisputedly submitted numerous documents to LCF officials, purportedly utilizing the ODOC Grievance Process framework, that requested relief on the primary complaint—refusal of soap and ensuing injury—underlying Plaintiff's Eighth Amendment and due process claims. *See* Am. Compl. at 9-10; Am. Compl. Exs. 1-2, Doc. Nos. 31-2, 31-3; Defs.' MSJ at 16-22; S.R. Exs. 18-21, Doc. Nos. 33-18, 33-19, 33-20, 33-21. The documents in the record show that Plaintiff failed to exhaust his administrative remedies with respect to his constitutional claims, as outlined below.

*Grievance Nos. 12-131 and 12-2570*

Plaintiff filed Grievance No. 12-131 on February 22, 2012, asserting that he had filed a Request to Staff on February 6, 2012, regarding the lack of soap the previous month, but received no response. *See* S.R. Ex. 18, Doc. No. 33-18, at 1; Am. Compl. at 9. On February 27, 2012, this Grievance was returned unanswered with the explanation, "No informal action taken, 'Request to Staff' response." S.R. Ex. 18 at 2.

Plaintiff's Grievance No. 12-131 failed to comply with the ODOC Grievance Process in two ways. First, pursuant to OP-090124 § IV(B)(7), an inmate is permitted to grieve a staff member's failure to respond to a Request to Staff "[i]f there has been no response in 30 calendar days of submission." S.R. Ex. 17, OP-090124 § IV(B)(7). Assuming Plaintiff accurately stated the date he submitted the Request to Staff as

February 6, 2012, his Grievance concerning the lack of response, which was submitted after his Request to Staff had been pending only 16 days, was premature by a full two weeks. *See* S.R. Ex. 17, OP-090124 § IV(B)(7); S.R. Ex. 18. Second, Plaintiff failed to submit a copy of the allegedly unanswered Request to Staff with his Grievance, as required for the Reviewing Authority to verify the grounds of his complaint. *See* S.R. Ex. 17, OP-090124 § IV(B)(7) (prescribing that Grievance must be filed "with evidence of submitting the 'Request to Staff' to the proper staff member"); *see also id.* §§ IV(B)(4) (requiring staff to retain original Request to Staff form and to return copy to inmate at submission), V(A) (requiring that underlying Request to Staff form or copy thereof be submitted along with any Grievance).

Sections IV(B)(7) and V(A)(7) of OP-090124 required Plaintiff to resubmit the Grievance regarding the February 6th Request to Staff (1) after the requisite 30 days had elapsed, and (2) with the relevant Request to Staff form attached. *See id.* §§ IV(B)(7) (outlining requirements to grieve lack of response to Request to Staff), V(A)(7) ("If the offender does not follow instructions as explained in this procedure and on the grievance forms, the grievance may be returned unanswered for proper completion. If allowed, the offender must properly re-submit the grievance within ten calendar days of receipt."). Plaintiff did not do so; nor did he appeal the Reviewing Authority's response to this Grievance to the ARA. *See id.* § VII.

Instead, Plaintiff submitted a new "Sensitive" Grievance—assigned No. 12-2570—directly to the ARA on March 1, 2012, attempting to invoke the provisions of OP-090124 allowing complaints of a sensitive or emergency nature to be submitted directly

10

to the Reviewing Authority or ARA without informal resolution. *See* S.R. Ex. 19, Doc. No. 33-19, at 5; S.R. Ex. 17, OP-090124 § VIII. This Grievance was returned unanswered by the ARA on March 6, 2012, citing various deficiencies, including "inmate on grievance restriction and/or proper documentation not included" and "[n]ot of a sensitive/emergency nature. [Plaintiff] must follow the standard grievance process including giving the facility an opportunity to respond." S.R. Ex. 19 at 6; S.R. Ex. 17, OP-090124 § VIII(C). Plaintiff did not attempt to resubmit a corrected filing to the ARA, although such resubmission is contemplated under OP-090124 § VII(B)(1)(e), or to return Grievance No. 12-2570 to the standard grievance process as per OP-90124 § VIII(C).

*Grievance No. 12-296*

Plaintiff submitted Grievance No. 12-296 on April 10, 2012, concerning his requests for soap. S.R. Ex. 19 at 1. In that Grievance, Plaintiff recited that he had submitted Requests to Staff on February 6 and March 12, 2012. S.R. Ex. 19 at 1. Plaintiff, however, now concedes that he submitted this Grievance "without a (RTS) attached"—a required submission as explained above. *See* Am. Compl. at 9; S.R. Ex. 19 at 1-3; S.R. Ex. 17, OP-090124 §§ IV(B)(7), V(A). The Grievance stated that Plaintiff had received "a black scar" and requested $200,000 in punitive and "mental anguish" relief "to compensate for emotional mental suffering from physical injury." S.R. Ex. 19 at 1-2.

Grievance No. 12-296 was returned unanswered to Plaintiff on April 13, 2012, based on the omission of a Request to Staff and other cited deficiencies. S.R. Ex. 19 at 4,

7. Plaintiff appealed to the ARA on April 17, 2012. S.R. at 7-9 (No. 12-2883). The Grievance Appeal was returned unanswered by the ARA on April 24, 2012, because, as conceded by Plaintiff, the accompanying affidavit (required because Plaintiff was on grievance restriction) did not list all of Plaintiff's "past grievances and/or grievance appeals." *See* Am. Compl. at 10 (alleging that "Plaintiff in affidavit did not list appealed grievances"); S.R. Ex. 19 at 10; S.R. Ex. 17, OP-090124 §§ VII(B)(5), IX(B)(2)(a).

Plaintiff did not revise and resubmit Grievance Appeal No. 12-2883 within the 30-day deadline contemplated by the ODOC Grievance Process. *See* S.R. Ex. 17, OP-010924 § VII(B)(1)(e). Instead, Plaintiff submitted an entirely new Grievance Appeal (assigned No. 12-2947) on May 3, 2012, i.e. 20 calendar days after the appealed Grievance was returned to Plaintiff by the Reviewing Authority on April 13, 2012. *See* S.R. Ex. 19 at 11. The ARA returned the Grievance Appeal as "out of time from date of facility head response." Am. Compl. Ex. 1, Doc. No. 31-2, at 8; *see* S.R. Ex. 17, OP-090124 § VII(B) ("The offender may make a final appeal to the [ARA] . . . within 15 calendar days of receipt of the reviewing authority's response or any amended response."). On May 22, 2012, Plaintiff filed a request to submit this Grievance Appeal out of time, vaguely stating as grounds that his submissions were filed in a timely manner, that the ARA refused to comply with policy, and that "the record shows the out of time was no fault of mine." S.R. Ex. 19 at 11; *see also* S.R. Ex. 17, OP-090124 § XII. The ARA denied Plaintiff's request because it confirmed upon review that Plaintiff's deadline to appeal had been April 28, 2012. S.R. Ex. 19 at 12.

"[A]fter five months of treatment" for injuries allegedly caused by the failure to issue soap in January 2012, Plaintiff filed a Request to Staff on May 1, 2012, regarding a "scar" and "two spots" allegedly resulting from the lack of soap, which he wanted "corrected." Am. Compl. at 10; S.R. Ex. 21, Doc. No. 33-21, at 1, 3. Plaintiff additionally requested nominal, "mental anguish," and punitive damages totaling $2,400,001. S.R. Ex. 21 at 1. A staff member responded on May 14, 2012, that Plaintiff would be scheduled to meet with a health services provider for evaluation. S.R. Ex. 21 at 1, 3. Dissatisfied with the informal resolution of his complaint, Plaintiff then filed Grievance No. 12-405, asserting that after two months of treatment, "this injury seems not to be corrected." S.R. Ex. 21 at 2, 4-5. Plaintiff's Grievance was returned unanswered on May 24, 2012, because: the Grievance was out of time from the date of the incident; Plaintiff was on a grievance restriction and his affidavit was not correct; the Grievance was not specific to include dates, places, personnel involved, and how affected; and no dates included regarding any informal action taken. S.R. Ex. 21 at 6; *see* S.R. Ex. 17, OP-090124 §§ V(A)(1), IX(B)(2)(a).

Plaintiff appealed to the CMO on June 1, 2012. S.R. Ex. 21 at 7-10. Plaintiff's appeal was returned unanswered on July 6, 2012, because (1) the original Request to Staff was not timely filed within 7 days of the incident; (2) there was no Grievance response from the Reviewing Authority (due to Grievance No. 12-405 not being submitted in accordance with policy); and (3) ODOC is not authorized by law to disburse

the monetary relief sought by Plaintiff. S.R. Ex. 21 at 11; *see* S.R. Ex. 17, OP-090124 §§ IV(B)(2), VII(B)(1)(c).

Plaintiff filed multiple requests to submit a Grievance Appeal out of time. *See* Am. Compl.. Ex. 2, Doc. No. 31-3, at 11; S.R. Ex. 21 at 12, 14-15. Each attempt was returned unanswered on account of various procedural defects. S.R. Ex. 21 at 13 (rejecting request because it was not shown that Plaintiff did not submit his Grievance in a timely manner through no fault of his own and because request focused on medical issues rather than an explanation as to why the appeal was out of time); Am. Compl. Ex. 2 at 11 (rejecting request because untimely filed more than 30 days from date Plaintiff's Grievance Appeal was returned—i.e., July 6, 2012); S.R. Ex. 21 at 16 (rejecting request because it referenced more than one appeal number and was out of time from denial of Grievance on July 6, 2012); *see* S.R. Ex. 17, OP-090124 § XII(A)-(C), (E).

### 4. Plaintiff's Failure to Properly Exhaust Administrative Remedies

As outlined above, Plaintiff filed numerous documents but has not submitted a timely, procedurally correct Grievance and Grievance Appeal as required for prison officials to reach the merits of Plaintiff's complaint and for determination of Plaintiff's § 1983 claims by the Court. *See* 42 U.S.C. § 1997e(a). The mandatory administrative remedy exhaustion requirement, *see Jones*, 549 U.S. at 211, applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To properly exhaust administrative remedies, Plaintiff may not file "an untimely or otherwise procedurally defective grievance or appeal"; rather, Plaintiff must

"us[e] all steps that the agency holds out, and do[] so *properly* (so that the agency addresses the issues on the merits)." *See Woodford*, 548 U.S. at 83-84, 90 (internal quotation marks omitted). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim . . . ." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002).

Here, there is no reasonable dispute that Plaintiff did not *properly* present his relevant grievances to prison authorities, "in accordance with the applicable procedural rules," such that the authorities were able to address the issues on the merits. *See Woodford*, 548 U.S. at 88, 90. "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218. As support for the entry of judgment to Defendants based upon the shortcomings outlined above, Defendants have submitted sworn affidavits from an official in the office of the ARA and an official in the office of the CMO. *See* S.R. Ex. 22, Doc. No. 33-22 (Nurse Manager Mike Murray Aff. of Dec. 19, 2012); S.R. Ex. 23, Doc. No. 33-23 (ARA Manager Mark Knutson Aff. of Feb. 4, 2013); Fed. R. Civ. P. 56(c). Each official states that he has access to inmate grievance files and that he has reviewed the files for Plaintiff. *See* S.R. Exs. 22, 23. The CMO official states that the Medical Services Review Authority "has not received any properly submitted grievance appeals" from Plaintiff since January 1, 2012. S.R. Ex. 22. The ARA official states that the office received several Grievance Appeal forms from Plaintiff, all of which were returned unanswered due to either procedural error or being filed out of time. *See* S.R. Ex. 23.

Plaintiff does not dispute Defendants' account of events with respect to their affirmative defense, but he contends that his failure to exhaust should be excused because he was prevented from exhausting administrative remedies by the actions of prison officials. *See* Pl.'s Resp. at 13-16; Pl.'s MSJ at 12-13. It is true that "[w]here prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust." *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010). Here, however, Plaintiff has failed to demonstrate that prison officials hindered his ability to exhaust administrative remedies.

Regarding Grievance Nos. 12-131 and 12-2570, in which Plaintiff sought relief for the Reviewing Authority's alleged failure to respond to Plaintiff's February 6, 2012 Request to Staff, Plaintiff concedes he did not include a copy of the relevant Request to Staff with his Grievance as evidence of its submission, as required by OP-090124 § IV(B)(7). Plaintiff asserts that he was prevented from complying with the ODOC Grievance Process because the Warden at LCF "refused to answer" the Request to Staff. Pl.'s Resp. at 13-15. Pursuant to OP-090124 § IV(B)(4), however, if Plaintiff did in fact submit a Request to Staff on his stated date he would have received a copy at that time; Plaintiff does not suggest or submit evidentiary material to show this did not occur. *See* S.R. Ex. 17, OP-090124 § IV(B)(4). Further, Plaintiff does not dispute that he did not allow the staff member the full 30 days to respond to his Request to Staff that is prescribed by the ODOC Grievance Process. *See id.* § IV(B)(7).

Plaintiff next argues that because his first attempt to appeal Grievance No. 12-296 was timely, his second attempt to appeal that Grievance should not have been rejected as untimely. *See* Pl.'s Resp. at 15; Pl.'s MSJ at 13; *see also* Am. Compl. at 10; S.R. Ex. 19 at 11. But even presuming Plaintiff's first attempt to appeal Grievance No. 12-296 was timely, this first attempt (Grievance Appeal No. 12-2883) was otherwise defective because Plaintiff undisputedly failed to include all of his appealed grievances on the required accompanying affidavit. *See* S.R. Ex. 19 at 10; Am. Compl. at 10; S.R. Ex. 17, OP-090124 §§ VII(B)(5), IX(B)(2)(a). Plaintiff did not resubmit his first Grievance Appeal, and his second Grievance Appeal (No. 12-2947) was filed out of time. *See* Am. Compl. Ex. 1 at 8; S.R. Ex. 17, OP-090124 § VII(B). In other words, Plaintiff failed to submit a complete, timely Grievance Appeal regarding Grievance No. 12-296 on either his first or second try. Moreover, Plaintiff points to no evidence in the record that would show error in the ARA's denial of Plaintiff's request to submit a Grievance Appeal out of time, given that Plaintiff set forth only nonspecific and conclusory grounds for his tardy filing on a form where Plaintiff expressly was required to "prove by substantial evidence" that he did not submit the appeal in a timely manner "through no fault of [his own]." *See* S.R. Ex. 19 at 11.

Further, the fact that Defendants returned deficient Grievances to Plaintiff without answering them does not excuse Plaintiff from the requirement that he exhaust administrative remedies. The ODOC Grievance Process expressly authorizes prison officials to return Grievances and Grievance Appeals unanswered if the inmate fails to follow instructions. *See, e.g.*, S.R. Ex. 17, OP-090124 §§ II(C) (directing that an

untimely Grievance "will be returned unanswered"), V(A)(7) (stating that if offender fails to follow instructions the Grievance "may be returned unanswered for proper completion"), VII(B)(5) ("Grievances and grievance appeals which present more than one issue or which are not filed in accordance with this procedure will be returned unanswered."); *see also Little*, 607 F.3d at 1249 (noting that "the prison's procedural requirements define the steps necessary for exhaustion"). "[D]efendants did not make the exhaustion process unavailable to [Plaintiff] by returning his documents unanswered." *See Thomas v. Parker*, 609 F.3d 1114, 1118 n.2 (10th Cir. 2010).

A pro se litigant's pleadings are liberally construed and "held to a less stringent standard" than those drafted by attorneys. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). This liberal construction, however, does not relieve Plaintiff from carrying his burden in opposing a motion for summary judgment. Having reviewed both parties' submissions, Plaintiff's declarations and supporting documents are insufficient to "demonstrate with specificity the existence of a disputed material fact." *See Hutchinson*, 105 F.3d at 564. The undisputed material facts show that Plaintiff did not *properly* submit a Grievance relating to his allegations against Defendants, and—even if he had—he did not *properly* submit a Grievance Appeal to the ARA or the CMO as required to complete the ODOC Grievance Process. *See Woodward*, 548 U.S. at 90; *cf. Jackson v. Workman*, 391 F. App'x 724, 725 (10th Cir. 2010) (holding that plaintiff failed to exhaust administrative remedies when he had not filed administrative appeal). As Plaintiff is aware, substantial compliance with ODOC's "'deadlines and other critical procedural rules'" does not suffice under the PLRA. *See Craft v. Null*, 543 F. App'x 778, 779 (10th

Cir. 2013) (quoting *Woodford*, 548 U.S. at 90) (affirming dismissal of § 1983 action by Mr. Craft for failure to exhaust administrative remedies). *See generally Craft v. Olden*, No. 13-7031, 2014 WL 1924636 (10th Cir. May 15, 2014) (affirming partial dismissal of § 1983 action by Mr. Craft for failure to exhaust administrative remedies and assessing a "strike" against Plaintiff under 28 U.S.C. § 1915(g)); *Craft v. Taylor*, No. 10-1091-R, 2011 WL 2077798 (W.D. Okla. May 25, 2011) (order dismissing § 1983 action by Mr. Craft for failure to exhaust administrative remedies).

None of the evidence in the record, even when construed in favor of Plaintiff as the nonmoving party on Defendants' Motion for Summary Judgment, creates a genuine question of fact that would prevent the conclusion that Plaintiff did *not* exhaust his administrative remedies prior to commencing his civil rights claims against Defendants. "[E]xhaustion is mandatory under the PLRA[,] and . . . unexhausted claims cannot be brought in court." *Jones*, 549 U.S. at 211. Accordingly, the undersigned finds that Defendants' affirmative defense of nonexhaustion of administrative remedies is established as a matter of law, and, therefore, summary judgment should be entered in favor of Defendants on Plaintiff's claims against them.[5]

### B. Whether the Court Should Exercise Supplemental Jurisdiction over Plaintiff's State-Law Claim

Because Plaintiff's Amended Complaint alleges no viable federal claim, and no amendment of that pleading would remedy Plaintiff's failure to exhaust administrative

---

[5] In light of this recommendation, the undersigned need not address Defendants' alternative arguments in support of summary judgment.

remedies, this Court should decline to exercise supplemental jurisdiction over Plaintiff's state-law negligence claim. *See* 28 U.S.C. § 1367(c)(3); *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims."); Am. Compl. at 4, 8, 10.

## RECOMMENDATION

For the foregoing reasons, the undersigned recommends that Defendants' Motion for Summary Judgment (Doc. No. 34) be GRANTED and that Plaintiff's Motion for Summary Judgment (Doc. No. 62) be DENIED. The undersigned further recommends that the Court decline to exercise supplemental jurisdiction over Plaintiff's state-law negligence claim.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file an objection to the Report and Recommendation with the Clerk of this Court by the 20th day of June, 2014, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. The parties are further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned magistrate judge in the present case.

ENTERED this 30th day of May, 2014.

CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE